## TIMOTHY MOSHIER

### v.

## HENRY D. SHEAR ET AL.

1. INTEREST, WHEN RECOVERABLE.—Where a demand is in good faith disputed or nothing has been done to hinder or delay proceedings for its collection, there can be no recovery of interest upon it as for an unreasonable and vexatious delay of payment, although such demand be really due. A delay of settlement is not necessarily a delay of payment.

2. EVIDENCE.—The court is of opinion that the allowance of an alleged payment of $300 was clearly against the evidence.

APPEAL from the Circuit Court of Knox county; the Hon. A. A. SMITH, Judge, presiding. Opinion filed August 20, 1884.

Messrs. SANFORD & CARNEY, for appellant; as to the allowance of interest, cited Clement v. McConnel, 14 Ill. 155; Myers v. Walker, 24 Ill. 133; Sammis v. Clark, 13 Ill. 547; Hitt v. Allen, 13 Ill. 596; Thompson v. Fullinwider, 5 Bradwell, 555; Aldrich v. Dunham, 16 Ill. 403; Devine v. Edwards, 101 Ill. 142; West Chi. Al. Works v. Sheer, 104 Ill. 589.

Messrs. McKENZIE & CALKINS, for appellees.

PLEASANTS, P. J. This suit was commenced by appellant, January 19, 1882, to recover the balance claimed to be due on

two promissory notes of appellees, of March 9, 1861, for $400 each, at two and four years respectively, given with four others of same date and amounting in all to $3,000, for the price of land to be conveyed upon their payment according to the contract of purchase. Pleas of the general issue and set-off were filed, but during the progress of the trial the former was withdrawn. A verdict was rendered for the defendants for $236.59, and judgment entered thereon, from which plaintiff appealed.

This controversy has been twice submitted to arbitrators. The first award was set aside by agreement, and the second upon a bill filed for that purpose, after a review of the proceedings here and in the Supreme Court (102 Ill. 169). Thereupon this suit was brought.

When these six notes were given appellant held a like series of six others for the same amount, bearing date January 10, 1857, and being for the price of another tract of land then purchased.

Payments were made from time to time in money, checks, cattle, corn and other articles, for all of which appellant claims he gave full credit by surrender or indorsement of one or more of the notes, or by both, though some of the credits included several items and were given upon settlements had at the dates thereof respectively.

The account filed with the plea of set-off embraced all the items of payment claimed by appellees, being twenty-four in number and running from November 22, 1864, to March 9, 1867. Many of them are undisputed and fully accounted for by the surrender of notes or by indorsements on those retained. Appellees claim, however, that some are not accounted for, and the verdict is made up of such as were so found, in excess of the amount remaining due after deducting the payments credited, and interest on such excess. An instruction for defendants authorized the jury to allow such interest, for unreasonable and vexatious delay of payment, if from the evidence they should find that there was any such excess and such delay by the plaintiff in the payment thereof.

The last payment made or claimed was on March 9, 1867,

when appellant credited it as being $1,986.40, while appellees say it was in fact $2,000. Previous to that time—but just when or whether later than 1864 does not appear—five of the twelve notes had been surrendered; and this payment, as was agreed on the trial, extinguished five others according to the indorsements thereon, and reduced the aggregate amount due on the remaining two here in suit, according to the indorsements on them, to $384.75, which, with the interest thereon as reserved, would make at the time of trial, December 11, 1883, the sum of $1,028.32. It appears that the jury allowed interest at six per cent. per annum from the date of that payment; and as the time is sixteen years and nine months, it would just about equal the principal. They must therefore have found that the payment exceeded the amount then remaining due to appellant by about the sum of $118.

We have been unable to discover in the record any evidence of an unreasonable and vexatious delay of payment by appellant. The testimony of appellee Henry D. Shear, is certainly the strongest, if not the only evidence against him on this point, and taken by itself, we think, is insufficient to support the instruction or the finding. The utmost that it tends to show is that appellant on two or three occasions which had been appointed for a settlement, postponed it; which may have been quite vexing to appellee without being vexatious on the part of appellant; and of the circumstances and reason which prompted it we are not informed. Nor is a delay of settlement necessarily a delay of payment. Shear says that when he paid the $2,000 he told Moshier he was satisfied he was paying him more than was due; but this was evidently no more than a suspicion or guess, for he afterward says that he had no means of knowing, at any time within a year thereafter, how much he had overpaid, because Moshier had the notes. He made the payment voluntarily, and as a payment. Moshier thought it made them so "nearly even" that he was willing to make the deed, thus enabling appellee to execute a mortgage on the land in order to get the very money he paid, and to settle as soon as should be convenient thereafter. But he never intimated an apprehension that the balance on settle-

Moshier v. Shear.

ment might be against him.    On the contrary he always expressed a belief that something was still his due.    That belief was verified by his calculation as soon as he made it, showing the balance remaining to be $384.75.    He vehemently denied every item of payment claimed that had not been credited, as soon as it was made known.    He made every appointment for a settlement that was made, and once wrote to Shear for that purpose.    Shear made no attempt, demand or request for it except during the first year after the payment, until 1874, a month before the first arbitration.    Moshier never in any way prevented, hindered or delayed a proceeding by Shear to collect whatever he thought was due him, but gave him every facility by furnishing copies of the notes and indorsements, and rather provoked it by his own claims and denials and the manner of them, and at last became himself the actor.    All this is shown by the testimony of Shear; from which it is manifest that when Moshier postponed a settlement he thought he was delaying receipt and not payment.

This is still more apparent in the light of the other evidence on this subject, to which it is unnecessary here to refer.    So that on the whole there is not only no evidence tending to show him guilty of an unreasonable and vexatious delay of payment—nor a fact to impeach the good faith of his claims, denials and appointments, except the fact of postponement; but the proof is affirmative and clear that he was not so guilty. The instruction was therefore erroneous, and the finding unsupported.    Where a demand is in good faith disputed, or nothing has been done to hinder or delay proceedings for its collection, there can be no recovery of interest upon it as for an unreasonable and vexatious delay of payment, although such demand be really due.    Clement v. McConnel, 14 Ill. 155;    Myers v. Walker, 24 Id. 133;    Aldrich v. Dunham, 16 Id. 403;    Sammis v. Clark, 13 Id. 547;    Hitt v. Allen, Ibid. 596;    Devine v. Edwards, 101 Id. 142;    West Chicago Alcohol Works v. Sheer, 104 Id. 589.

But was there anything due to appellees?    As above shown the jury found there was, to about the sum of $118.    It is conceded that they allowed an alleged payment of $300 as of

February 21, 1865, without which a balance of nearly $200 of principal due after the payment of March 9, 1867, must have been found the other way. We think this allowance was so clearly against the evidence that it ought not to stand.

No other payment between the 16th of December, 1864, and the 19th of May following is pretended upon the evidence. David Shear, a son of appellee, testified that in February, 1865, as he thinks, but fixes no date, he paid $300 which his father had counted out and given him for that purpose, to appellant, in the road, south of town; and Josiah Multy, his uncle, stated that he was with him, and corroborated him as to the fact, but fixed the time no nearer than the latter part of February. It is shown without contradiction that between the 20th and 25th of that month, Henry D. Shear and appellant were together at the latter's room with notes lying on the desk before them, and were talking about pasturage of some cattle for which Shear claimed pay, and about a settlement; and that he then paid appellant some money. It also appeared that on one of the notes was this indorsement: "Received February 21, 1865, $400 as interest." Moshier has no recollection of the circumstance now, but is satisfied from his indorsement that he then received that money or its equivalent. Appellee says nothing about it, though he was fully examined in chief upon all the items of his account of which he had knowledge, disputed and undisputed, and said he had kept memoranda of his payments in his diary, to which he constantly referred to refresh his memory. The fullness of this examination was explained on the ground that he did not know what items had been credited. He did not, then, rely on the indorsement for proof, and would have testified to this credit himself if he had known of any such payment as other and different from that made about that time by David. He has had the benefit of this credit of $400, of which he furnished no proof or explanation, upon the evidence of its indorsement. Ought he also to be allowed credit for the $300? To our minds the only reasonable inference from the testimony is that this indorsement covers the payment by David—that that payment was made before the 21st and not immediately credited because it was

made on the road—while Moshier was going we know not where and to be gone we know not how long—and afterward, on the 21st, appellee made a settlement with him, in which he was allowed some amount for pasturing and paid some amount in cash, which, added to that paid by David, made up the $400 then indorsed. Or, it would be easier to believe that after so many years David had forgotten and understated the amount he paid, or that Moshier on his return—through ignorance, forgetfulness or inadvertence—misstated it in his indorsement, than that two payments of such large sums were made on or about the same day and neither appellee, with his diary, nor anybody else should now know of but one.

It is unnecessary to speak of the testimony relating to other disputed items, and we only add that the evidence of King's statements in the absence of appellant was improperly admitted, and the foundation for the contradiction of Severance not well laid.

For the errors above noted the judgment must be reversed and the cause remanded.

Reversed and remanded.